UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-CV-22917-WILLIAMS/REID

JAMES WATSON,

    Plaintiff,

vs.

LEMONGRASS RPP LLC
d/b/a Lemongrass Asian Bistro.

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND/OR FAILURE TO STATE A CLAIM**

This matter is before the Court on Defendant Lemongrass RPP LLC's ("Lemongrass") Motion to Dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction and/or failure to state a claim. [ECF No. 20]. Defendant's motion was referred to me for Report and Recommendation by the Honorable Kathleen M. Williams, United States District Judge. [ECF No. 22]. *See* 28 U.S.C. § 636. Plaintiff filed a response in opposition to the motion [ECF No. 25], and Defendant filed a reply memorandum in support of the motion [ECF No. 26]. The undersigned conducted a hearing on Defendant's Motion to Dismiss on May 9, 2023. [ECF No. 38]. After careful consideration of the Parties' arguments, the briefs, the record, and the relevant legal authorities, the undersigned **RECOMMENDS** that [ECF No. 20] Defendant's Motion to Dismiss the Amended Complaint be **DENIED**.

**I.    BACKGROUND**

Plaintiff is blind and currently lives in Miami. [ECF NO. 12 at 1]. On November 11, 2023, Plaintiff filed his Amended Complaint pursuant to Title III of the Americans with Disabilities Act

of 1990 (ADA), seeking declaratory and injunctive relief, attorney's fees, costs, and litigation expenses. [ECF No. 1, 12 at 15–16].

Plaintiff alleges that he is legally blind and therefore, under the ADA, "qualifies as an individual with disabilities" and is "a member of a protected class." [ECF No. 12 ¶ 3]. He uses Apple Screen Reader VoiceOver, a visual-aid software, to access computer materials, including websites. [*Id.* ¶ 4].

Taking Plaintiff's allegation as true, as we must at this stage of the litigation, *see Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008), Defendant Lemongrass is a Florida limited liability company that owns and operates a restaurant located in Boca Raton named "Lemongrass Asian Bistro." [*Id.* at 6]. The Boca Raton restaurant is a place of public accommodation within the meaning of Title III and is part of a small chain of restaurants located throughout Florida, that is, in Boca Raton, Boynton Beach, and Wellington. [*Id.* ¶ 6–8]. Defendant created the mobile website https://lemongrassasianbistrobocaraton.com, after the effective date of the ADA, for the public to access information on all Lemongrass locations, including goods, services, accommodations, privileges, benefits, and facilities. [*Id.* ¶ 9]. The Boca Raton location and the mobile website itself are categorized as a "Place of Public Accommodation" and are thus "subject to the requirements of Title III of the ADA, 42 U.S.C. § 12181(7)(B) and 28 C.F.R. § 36.104(2)," because "it is offered as a tool to promote, advertise and sell products and services from Defendant's Lemongrass Boca Raton restaurant, which is a place of public accommodation." [*Id.* ¶¶ 6, 10, 11].

However, Plaintiff claims Defendant's mobile website does "not properly interact with the VoiceOver screen reader software technology in a manner that allows blind and visually impaired individuals to comprehend the mobile website and does not provide other means to accommodate blind and visually impaired individuals." [*Id.* ¶¶ 12]. As a result, Plaintiff has been denied "full

and equal access" to the mobile website. [*Id*. ¶ 27]. The mobile website is an integral part of the goods and services offered by Defendant because it provides reservation services, menu options, online food ordering and delivery, and the ability to inquire about private dining and catering. [*Id*. ¶ 10]. Plaintiff will continue to return to the website on monthly basis "to determine whether it is in compliance with the ADA." [*Id*. ¶ 14].

Defendant has moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). Defendant Lemongrass seeks to dismiss the Amended Complaint on two bases: (1) Plaintiff lacks Article III standing; and (2) Plaintiff failed to state a claim under Title III of the ADA. [ECF No. 20 at 9, 13].

## II.     LEGAL STANDARD

Motions to dismiss for lack of standing challenge the Court's subject-matter jurisdiction; thus, Rule 12(b)(1) governs. *See Kennedy v. Floridian Hotel, Inc.*, No. 1:18-CV-20839-UU, 2018 WL 10601977 (S.D. Fla. Dec. 7, 2018). "[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A "facial attack" on the complaint—like this one—"require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)).

A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### III.  DISCUSSION

Plaintiff brings one claim against Lemongrass, violation of Title III of the ADA, 42 U.S.C. § 12181 *et seq*. As relief, Plaintiff seeks declaratory and injunctive relief, including an order directing Defendant to make its website accessible to disabled individuals as required under the ADA. [*Id.* ¶ 33].

**Standing**

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The case-or-controversy requirement, or the standing inquiry, "'identif[ies] those disputes which are appropriately resolved through the judicial process.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To establish standing, a plaintiff must allege (1) an "injury in fact" that is both

"concrete and particularized" and "actual or imminent," (2) a "casual connection between the injury and the conduct complained of," and (3) an injury that is "likely" to be "redressed by a favorable decision." *Id.* at 560–61. Regarding the first element, the Eleventh Circuit has explained:

> First, there must be a concrete and particularized injury. *Lujan*, 504 U.S. at 560. An injury is particularized when it "affects the plaintiff in a personal and individual way." *Id.* at 560 n.1. To be concrete, the injury must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 352 (2016). The term concrete, however, is not necessarily synonymous with the word tangible—intangible injuries can be concrete. *Id.* at 341.
>
> Second, the harm must be actual or imminent. *Lujan*, 504 U.S. at 560. Our analysis here often depends on the type of relief the plaintiff seeks. *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019); *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) ("The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought."). When the plaintiff seeks damages, we consider whether an alleged past harm occurred. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 (1983) (explaining that plaintiff must show past harm to recover in an action for damages). **On the other hand, when the plaintiff is seeking an injunction, we determine whether he or she adequately demonstrates that a future injury is imminent**—that there is "a sufficient likelihood that he or she will be affected by the allegedly unlawful conduct in the future." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004); *see also id*. at 1306 (finding that because the plaintiff sought declaratory and injunctive relief the injury analysis "is concerned with future harm, not past harm"); *Houston*, 733 F.3d at 1328.

*Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) (cleaned up) (emphasis added).

In *Houston*, an ADA case involving accessibility to a grocery store, the Eleventh Circuit considered at least four factors in assessing whether the plaintiff had standing for injunctive relief: (1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business. *Houston*, 733 F.3d at 1337 n.6. Since then, this Court has explained that while the *Houston* factors "fit somewhat uncomfortably

when looking to claims involving inaccessible websites, courts nonetheless continue to apply these factors to such cases." *Gomez v. Miami Int'l Univ. of Art & Design, Inc.*, No. 19-21757-CIV, 2022 WL 1773883, at *3 (S.D. Fla. June 1, 2022); *cf. Lugo v. Island Harbor Beach Club, LLC*, No. 2:22-CV-66-SPC-NPM, 2022 WL 1773973, at *3 (M.D. Fla. June 1, 2022) (explaining the *Houston* factors are not tailored for website cases).

In website cases, courts will also look to "the type of information that is inaccessible" and "the relation between the inaccessibility and [the] alleged future harm." *Gomez*, 2022 WL 1773883, at *2 (quoting *Price v. Escalante-Black Diamond Golf Club LLC*, No. 5:19-cv-22-Oc-30PRL, 2019 WL 1905865, at *6 (M.D. Fla. Apr. 29, 2019)). No factor is dispositive—courts must "consider the totality of relevant facts." *See Black Diamond*, 2019 WL 1905865, at *6.

Here, Defendant argues the Amended Complaint must be dismissed for lack of subject matter jurisdiction as Plaintiff has not established standing. *See* Fed. R. Civ. P. 12(b)(1). Defendant mainly argues that the Amended Complaint's allegations fail to show a real and immediate injury that warrants injunctive relief. Defendant asserts, for example, that "there is no plausible basis for Plaintiff to patronize a restaurant regularly in Boca Raton . . .." [ECF No. 20 at 1]. In his memorandum in opposition to the Motion, Plaintiff responds that the Eleventh Circuit recently held in *Laufer v. Arpan*, 29 F.4th 1268 (11th Cir. 2022), that ADA plaintiffs have standing to assert claims regarding inaccessible websites even if those plaintiffs have no intention to visit the physical location. Defendant counters that *Laufer* is distinguishable because the plaintiff in that case had sought compensatory damages in addition to injunctive relief. [ECF No. 25 at 4].

After reviewing the pleadings and relevant case law, and taking the Amended Complaint's allegations as true, I find that Plaintiff has sufficiently established standing to seek injunctive relief.

6

First, although *Laufer* [1] is indeed distinguishable, the Eleventh Circuit reiterated there that to establish standing, on remand, the plaintiff would need to establish an imminent future injury to have standing to seek injunctive relief. If anything, Plaintiff interprets *Laufer* too broadly. In *Gomez*, the plaintiff had also argued that, pursuant to *Laufer*, ADA plaintiffs have standing to assert claims regarding inaccessible websites even if those plaintiffs have no intention to return. This Court disagreed, stating that plaintiff had "read[] too much into *Laufer*." *Gomez*, 2022 WL 1773883, at *2. And that, "the only question before the court in *Laufer* was whether plaintiffs adequately plead a 'concrete and particularized injury' if they have no intention of visiting the physical location associated with the inaccessible website at issue." *Id.* (citing *Laufer*, 29 F.4th at 1271).

More specifically, *Laufer* held that the plaintiff had at least alleged an Article-III "stigmatic injury" by alleging she had suffered frustration and humiliation as a result of viewing the inaccessible website. *See id.* at 1270. The Eleventh Circuit explained that an emotional injury was a relevant consideration in a Title II *damages* action. *See id.* at 1274. The plaintiff, however, would still need to establish the other elements of standing, that is, "the sort of imminent future injury required in a suit for injunctive relief, traceability, and redressability." *Id.* at 1275. All this to say that while *Laufer* provides some guidance, this Court must consider other factors in determining whether Plaintiff has shown a future injury.

In *Gomez*, this Court relied on the *Houston* factors noting that to determine whether the plaintiff had pleaded sufficient standing for injunctive relief, the court would need to assess

---

[1] The Supreme Court recently granted a petition for a writ of certiorari in a case from the First Circuit that involves the same plaintiff and similar facts as *Laufer*. *See Acheson Hotels, LLC v. Laufer*, ⸺ U.S. ⸺, 143 S. Ct. 1053, ⸺ L.Ed.2d ⸺ (Mar. 27, 2023) (No. 22-429). Because of this, the Eleventh Circuit stayed the issuance of its mandate in *Laufer*, 29 F.4th 1268, and denied the defendant's petition for a rehearing en banc. *See Laufer v. Arpan LLC*, 65 F.4th 615 (11th Cir. 2023).

whether plaintiff adequately alleged a "real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Gomez*, 2022 WL 1773883, at *3. And, the threat of future harm could not arise merely from the "inaccessibility of the information [online] itself," but must turn instead on "the effect that the inaccessibility ha[s] on the plaintiff's ability to use the information for its intended purpose." *Id.* (quoting *Price v. City of Ocala, Fla.*, 375 F. Supp. 3d 1264, 1275 (M.D. Fla. 2019)).

In *Gomez*, the plaintiff had sued Miami International University of Art & Design for declaratory and injunctive relief under Title III based on allegations that its website was incompatible with the screen reading software. After applying the *Houston* factors, the Court concluded that the plaintiff had failed to allege a real and immediate threat of future injury by pleading that he was a "prospective" student who was "interested" in attending the university at some point in the future. *Id.* at *4. *Gomez* noted that plaintiff did not allege he intended to visit "either the physical campus *or* the website" in the future. In support, the Court cited *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1364 (S.D. Fla. 2001), which had held that the "intent to return" is the "irreducible minimum of the standing inquiry." *Id.* (emphasis added).

Notably, here, Plaintiff has alleged he "will continue to return to the website on [a] monthly basis to determine whether it is in compliance with the ADA." [ECF No. 12 ¶ 14]. He adds that, like the seeing community, he would "like the opportunity to be able to use and/or test whether Defendant's website to comprehend menu selections and test for the ability to make reservations to dine in the Lemongrass Boca Raton restaurant, to order food online, to inquire about hosting private dining events, and to purchase gift cards online." [*Id.* at ¶ 13]. Unlike *Gomez*, Plaintiff has specified when he plans to return to the website and the effect of being unable to access the

8

information on Defendant's website. By doing so, Plaintiff has satisfied the "irreducible minimum" of the standing inquiry. The "definiteness" of Plaintiff's plan to return weighs in favor of finding a sufficiently alleged future injury. *Cf. Price v. Orlando Health, Inc.*, No. 6:17-cv-1999-Orl-40DCI, 2018 WL 6434519, at *4 (M.D. Fla. Dec. 7, 2018) (holding that "indefinite 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support" a finding of standing).

As discussed, the *Houston* factors—(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business—do not fit comfortably with cases involving inaccessible websites. But again, no factor is dispositive, and courts must consider the totality of relevant facts. *Gomez*, 2022 WL 1773883, at *3. And, even applying the *Houston* factors, Plaintiff has established standing.

First, Plaintiff's proximity to the restaurants leans towards future injury. Plaintiff lives about 45 miles away from Defendant's Boca Raton location, which is not an implausible distance as Defendant contends. *See Lugo v. Island Harbor Beach Club*, LLC, No. 2:22-CV-66-SPC-NPM, 2022 WL 1773973 (M.D. Fla. June 1, 2022) (finding 208-mile distance weighed in favor of future injury). Second, although Plaintiff has no past patronage and he has not alleged he travels near the restaurants, allegations that he will return to the website are more relevant. *See Parks v. Richard*, No. 220CV227FTM38NPM, 2020 WL 2523541, at *3 (M.D. Fla. May 18, 2020) (explaining plaintiff's definite plan to use the websites in six months and again in one year supported definiteness of a future injury).

Plaintiff's allegations of the discriminatory effect of being unable to access Defendant's website are relevant to the analysis. He has adequately alleged that the noncompliant website

creates an intangible barrier that excludes him, a disabled person, from accessing the goods, services, and privileges of Defendant's physical stores. Additionally, the website provides information related to the restaurants' facilities, goods, services—including hours of operation, physical addresses, catering services, and delivery services. And he alleges he cannot use those features if the website remains noncompliant and, "there are no other means to accommodate blind and visually impaired individuals." [ECF No. 12 ¶ 12].

Defendant argues that Plaintiff "did not and cannot allege any concrete cogent reason for a return visit(s) to the website"—but that is not a factor under *Houston* or other binding precedent. *See* [ECF No. 20 at 12]. In fact, much of Defendant's position boils down to questioning Plaintiff's motive for visiting the website. "Yet ADA testers' status does not strip them of standing." *Id.* (citing *Houston*, 733 F.3d at 1332–34). In sum, at this stage of the proceedings, and taking the allegations as true, Plaintiff has shown he faces a real and immediate threat of injury if his claim for injunctive relief is not granted. For these reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction be **DENIED**.

### B. Failure to State a Cause of Action

Defendant argues Plaintiff cannot establish a prima facie case under Title III of the ADA. The Court disagrees.

Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To prevail on a website accessibility claim under the Title III of the ADA, "a plaintiff must establish '(1) that the plaintiff is disabled; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendant denied the plaintiff—on the

basis of the disability—full and equal enjoyment of the premises.'" *Watson v. Sea Grill of Coral Gables, LLC*, No. 22-CV-20601-JEM, 2022 WL 18108547 (S.D. Fla. Dec. 19, 2022), *report and recommendation adopted*, No. 22-20601-CIV, 2023 WL 34690 (S.D. Fla. Jan. 4, 2023) (quoting *Gomez v. Dadeland Dodge, Inc.*, No. 19-cv-23682, 2020 WL 8919440, at *2 (S.D. Fla. Apr. 24, 2020)).

The ADA sets forth several requirements for places of public accommodation, "and a failure to comply with these requirements is often defined as discrimination." *Barberi v. Pub. Storage*, No. 19-cv-62172, 2020 WL 4060547, at *2 (S.D. Fla. May 8, 2020). Title III's protection "covers both tangible . . . and intangible barriers." *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002). Accordingly, goods and services offered as part of a place of public accommodation are similarly subject to ADA compliance, and "cannot discriminate against people on the basis of a disability, even if those goods and services are intangible." *Haynes v. Dunkin' Donuts LLC*, 741 F. App'x 752, 754 (11th Cir. 2018).

"[I]f a website operates as an intangible barrier to a physical place of public accommodation, a plaintiff can state a claim under Title III of the ADA." *Ariza v. Broward Design Ctr., Inc.*, No. 22-cv-61475, 2022 WL 10262037 at *2 (S.D. Fla. Oct. 18, 2022). Thus, ADA accessibility claims may include claims that an individual was denied access to a website. *See Haynes*, 741 F. App'x at 754 (11th Cir. 2018). When alleging a claim concerning accessibility of a website, "the nexus [between the violation and the physical place of public accommodation] must concern 'an inability to use a website that impedes access to enjoy a physical location.'" *Gomez*, 2020 WL 8919440 at *2 (quoting *Price v. Everglades College, Inc.*, 2018 WL 3428156, at *2 (M.D. Fla. July 16, 2018)). For the following reasons, I find that Plaintiff has sufficiently alleged each element of his ADA Title III claim.

11

Taking the well-pleaded allegations as true, Plaintiff has adequately stated a claim of an ADA Title III violation. First, Plaintiff is legally blind and thus disabled under the ADA. [ECF No. 12 at ¶ 3]. Second, Defendant operates a restaurant open to the public and jointly created one corresponding mobile website for patrons to obtain information on the restaurant and the other Lemongrass restaurants, including menus and services, such that the mobile website constitutes a place of public accommodation. [*Id.* ¶¶ 6–10]. Third, he was barred from enjoying the services and facilities of the Defendant's physical restaurant and the related mobile website because the mobile website does not properly interact with the visual-aid software. [*Id.* ¶¶ 12–13]. Furthermore, he intends to make additional attempts to patronize Defendant's mobile website. [*Id.* ¶ 14]. Until Defendant amend their mobile website to accommodate visually impaired individuals, he will continue to suffer from discrimination and unequal treatment. [*Id.* ¶ 16].

Defendant's arguments that Plaintiff is a "serial plaintiff," and that Defendant has remediated any noncompliance since this lawsuit was filed—rely on facts far outside the pleadings and are not appropriate for a 12(b)(6) motion. *See Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274 (11th Cir. 2015) (explaining that in analyzing a motion to dismiss the court would not consider anything beyond the face of the complaint and documents attached thereto). The Court **RECOMMENDS** that Defendant's Motion to Dismiss for Failure to State a Cause of Action be **DENIED**.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant Lemongrass's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 20] be **DENIED**.

Objections to this Report may be filed with the district judge within **FOURTEEN** (14) days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo*

determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 5th day of June, 2023.

*/s/ Lisette Reid*
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

**cc:  All Counsel of Record**